## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

NOT FOR PUBLICATION

| | |
|---|---|
| TIBURON LOCKERS, INC., et al.,<br><br>Plaintiff,<br>v.<br><br>FLETCHER, et al.,<br><br>Defendants. | Civil Action No.<br><br>2:15-cv-06970-CCC-SCM<br><br>**ON CROSS-MOTIONS TO ENFORCE SETTLEMENT**<br><br>**[D.E. 79, 81]** |

## REPORT AND RECOMMENDATION

STEVEN C. MANNION, United States Magistrate Judge.

Before this Court are cross-motions to enforce a settlement agreement by both the Plaintiffs Tiburon Lockers, Inc. and Tiburon Management, LLC (collectively, "Tiburon") and the Defendants Reuben J. Fletcher ("Mr. Fletcher"), Benethan, LLC, Nicholle Palacios and Christopher Hentschel (along with Mr. Fletcher, collectively, "the Fletcher Defendants").[1] Tiburon and the Fletcher Defendants agree that a settlement exists,[2] and as explained further below, they also agree on almost all of the terms of the settlement. Each party wants to enforce the existing settlement, but they disagree as to one aspect of it, and this dispute has delayed final consummation of the settlement agreement. Tiburon also seeks costs, expenses, and fees for its efforts to enforce the settlement. The Honorable Claire C. Cecchi, United States District Judge, referred these

---

[1] (ECF Docket Entry No. ("D.E.") 79, Pls.' Mot.); (D.E. 81, Defs.' Mot.).

[2] (D.E. 79, Pls.' Mot., 1 ("[A] settlement agreement exists between the parties[.]"); (D.E.81, Defs.' Mot., 6, n.6 ("The Parties do not dispute that a settlement agreement was reached between them.").

motions to the undersigned for a report and recommendation.[3] Upon consideration of the parties' submissions, and for the reasons stated below, it is respectfully recommended that the cross motions each be **GRANTED IN PART AND DENIED IN PART**.

**I.      BACKGROUND AND PROCEDURAL HISTORY**

Tiburon filed the instant action with this Court on September 21, 2015.[4] After the Fletcher Defendants filed a motion to dismiss,[5] Tiburon filed an Amended Complaint,[6] which was followed by another motion to dismiss.[7] The District Court granted in part and denied in part that motion to dismiss,[8] and Tiburon filed a Second Amended Complaint on September 29, 2016, which included claims for breach of contract, breach of fiduciary duty, fraud, and misappropriation of trade secrets, among other claims.[9] The Fletcher Defendants then filed an Answer,[10] and included counterclaims for breach of contract and fraud, to which Tiburon answered.[11] On December 20, 2016, the case was referred to mediation.[12]

---

[3] *See* L. Civ. R. 72.1(a)(2).

[4] (D.E., Compl.).

[5] (D.E. 15, Mot. to Dismiss).

[6] (D.E. 16, Am. Compl.).

[7] (D.E. 21, Mot. to Dismiss).

[8] (D.E. 36, Op., Aug. 8, 2016).

[9] (D.E. 43, Sec. Am. Compl.).

[10] (D.E. 46, Ans.).

[11] (D.E. 47, Ans.).

[12] (D.E. 55, Order, Dec. 20, 2016).

After some months and two telephone conferences with this Court, on August 2, 2017, the parties jointly notified the Court by letter that they had reached a settlement.[13] That letter, written by Tiburon's counsel, stated in pertinent part:

> I write on behalf of counsels for all parties…to advise that the parties have agreed to a settlement in principal. Counsels for the parties are in the process of memorializing the settlement by preparing written documents with all material terms. In sum, the settlement is comprised of a lump sum payment, a payment to be made over time, secured by a mortgage and an insurance policy, and a consent judgment to be entered by Your Honor and filed/docketed only in the event of an uncured default of the settlement terms.[14]

(Counsel for the Fletcher Defendants did not dispute or object to anything in that joint letter.)

On August 8, 2017, the District Court ordered a 60-day administrative termination of the case, pending final consummation of the settlement and a stipulation of dismissal entered by the parties.[15] Thereafter, the parties requested a total of five extensions of this period.[16] The requests made clear that the parties still considered themselves to have agreed to a settlement.[17] The District Court granted the parties all of these extensions.[18] On the final day of the fifth extension, Tiburon

---

[13] (D.E. 66, Joint Ltr., Aug. 2, 2017).

[14] *Id.*

[15] (D.E. 67, Order, Aug. 8, 2017).

[16] (D.E. 68, Joint Ltr., Oct. 4, 2017); (D.E. 70, Joint Ltr., Nov. 8, 2017); (D.E. 72, Joint Ltr., Nov. 27, 2017); (D.E. 74, Joint Ltr., Dec. 8, 2017); (Dec. 20, 2017).

[17] (*See, e.g.*, D.E. 70 ("The parties have reached a settlement and exchanged various versions of documents formalizing the terms and details thereof. However additional time is needed to finalize the documents[.]")).

[18] (D.E. 69, Order, Oct. 5, 2017); (D.E. 71, Order, Nov. 8, 2017); (D.E. 73, Order, Nov. 27, 2017); (D.E. 75, Order, Dec. 11, 2017); (D.E. 77, Order, Dec. 21, 2017).

filed its present motion to enforce the settlement agreement, which was followed by the Fletcher Defendants' present cross-motion to enforce.[19]

## II. **LEGAL STANDARD**

A federal court sitting in diversity must apply the substantive law of the forum state in deciding questions pertaining to the construction and enforcement of contracts.[20] Under New Jersey law, a settlement agreement between parties to a lawsuit is itself a contract that is separate and independent from the underlying dispute.[21] New Jersey public policy favors settlements.[22] Courts will therefore "strain to give effect to the terms of a settlement wherever possible."[23] "Traditional contract law rules provide that a contract arises from the manifest intentions of the parties to engage in an offer and acceptance of sufficiently definite essential terms."[24] "A basic principle of contract interpretation is to read the document as a whole in a fair and common sense

---

[19] (D.E. 79, Pls.' Mot.); (D.E. 81, Defs.' Mot.).

[20] *See LNT Merch. Co. v. Dyson, Inc.*, No. 08-2883, 2009 WL 2169236, at *1 (D.N.J. July 21, 2009) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S. Ct. 817, 822, 82 L. Ed. 1188 (1938); *Cooper Labs. v. Int'l Surplus Lines Ins. Co.,* 802 F.2d 667, 672 (3d Cir. 1986); *Excelsior Ins. Co. v. Pennsbury Pain Ctr.,* 975 F. Supp. 342, 348–49 (D.N.J. 1996)).

[21] *Payer v. Berrones*, No. 12-1704, 2015 WL 4715953, at *2 (D.N.J. Aug. 7, 2015) (internal citation omitted); *Pac. All. Grp. Ltd. v. Pure Energy Corp.*, No. 02-4216, 2006 WL 166470, at *2 (D.N.J. Jan. 23, 2006) (citing *Cooper-Jarrett, Inc. v. Cent. Transp., Inc.,* 726 F.2d 93, 96 (3d Cir.1984)).

[22] *Longo v. First Nat. Mortg. Sources*, 523 F. App'x. 875, 878 (3d Cir. 2013) (citing *Nolan v. Lee Ho,* 120 N.J. 465, 472, 577 A.2d 143, 146 (1990)).

[23] *McDonnell v. Engine Distributors*, No. 03-1999, 2007 WL 2814628, at *3 (D.N.J. Sept. 24, 2007), *aff'd*, 314 F. App'x 509 (3d Cir. 2009) (citing *Dep't of Pub. Advocate, Div. of Rate Counsel v. New Jersey Bd. of Pub. Utilities*, 206 N.J. Super. 523, 528, 503 A.2d 331, 333–34 (App. Div. 1985)).

[24] *Longo v. First Nat. Mortg. Sources*, 523 F. App'x. 875, 878 (3d Cir. 2013) (citing *Nolan v. Lee Ho*, 120 N.J. 465, 472 (1990)).

manner."[25] "In general, settlement agreements will be honored absent a demonstration of fraud or other compelling circumstances. . . . Before vacating a settlement agreement, our courts require clear and convincing proof that the agreement should be vacated."[26]

## II.  DISCUSSION AND ANALYSIS

The present motions demonstrate that the parties continue to agree, not simply to the generally expressed terms of the August 2017 letter informing the Court of settlement, but to almost all the particulars that flesh out the terms of that letter. The parties agree that under the settlement, in consideration for Tiburon releasing all claims against the Fletcher Defendants,[27] the Fletcher Defendants are to make a lump sum payment to Tiburon of $60,000 within 90 days of the execution of the settlement.[28] They agree that for thirteen years after the lump sum payment is made, the Fletcher Defendants are to pay Tiburon $5,000 every quarter (i.e. every 90 days).[29] This results in an agreed upon total settlement amount of $320,000.[30] The parties also agree to sign a consent judgment for $740,000, to be held in escrow and only to be filed in the event the Fletcher Defendants default on payment of the settlement amount.[31] The parties further agree that as

---

[25] *Hardy ex rel. Dowdell v. Abdul-Matin*, 198 N.J. 95, 103, 965 A.2d 1165, 1169 (2009).

[26] *Nolan by Nolan v. Lee Ho*, 120 N.J. 465, 472, 577 A.2d 143, 146 (1990) (first quoting *Pascarella v. Bruck*, 190 N.J. Super. 118, 124, 462 A.2d 186, 190 (App. Div. 1983); then quoting *DeCaro v. DeCaro*, 13 N.J. 36, 97 A.2d 658 (1953)).

[27] All draft agreements submitted as exhibits to the present motions demonstrate that there was such consideration given to the Defendants for its obligations. (D.E. 79, Pls.' Mot., Ex. D); (D.E. 81, Defs.' Mot., Ex. C – Ex. M).

[28] (D.E. 79, Pls.' Mot., 5); (D.E. 81, Defs.' Mot., 3).

[29] *Id.*

[30] *Id.*

[31] *Id.*

security for the required payments, Tiburon will take a second mortgage on Mr. Fletcher's residence in the amount of $260,000, and Mr. Fletcher will cooperate with Tiburon in order for Tiburon to obtain a $740,000 life insurance policy on Mr. Fletcher, all costs of which, including premiums, are to be borne by Tiburon.[32] All of these details were communicated by e-mail from Tiburon's counsel to the Fletcher Defendants' counsel on July 31, 2017.[33] All of these details were also in the draft agreement that the Fletcher Defendants' counsel sent to Tiburon's counsel on August 21, 2017.[34] Therefore, all of these material terms to which the parties currently agree, were in fact agreed upon right around the time the parties first informed the Court that they had settled.

The only real disagreement between the parties at present concerns the potential event in which Mr. Fletcher dies - without the Fletcher Defendants being in default - before the completion of the thirteen-year period. In that scenario, Tiburon believes it is entitled to collect the entirety of the life insurance payout, less any payments made by the Fletcher Defendants.[35] The Fletcher Defendants argue that Tiburon should only be able to collect an amount equal to what the Fletcher Defendants owe Tiburon at the time of Mr. Fletcher's death plus the amount Tiburon has spent on the premiums.[36]

The Court finds that the details to which the parties agree amount to "sufficiently definite essential terms"[37] to enforce the settlement even without a decision as to the potential scenario

---

[32] *Id.*

[33] (D.E. 81, Defs.' Mot., Ex. A).

[34] (D.E. 81, Defs.' Mot., Ex. C).

[35] (D.E. 79, Pls.' Mot., 11).

[36] (D.E. 81, Defs.' Mot., 12-13).

[37] *Longo*, 523 F. App'x. at 878.

6

currently under dispute. Nonetheless, the Court also finds that Tiburon's position accords with the settlement as it was agreed to in the summer of 2017.[38] In the draft agreement that the Fletcher Defendants' counsel sent to Tiburon's counsel on August 21, 2017, the term "Term Life Insurance Policy" is defined as follows:

> "Term Life Insurance Policy" shall mean the term life insurance policy to be obtained by Plaintiffs and providing death benefits to be paid upon the death of Mr. Fletcher in the amount of Seven Hundred-Forty Dollars and No Cents ($740,000.00).[39]

Later in that same draft, in the section devoted to the insurance policy, it reads: "The death benefits of the Term Life Insurance Policy shall be Seven Hundred-Forty Dollars and No Cents ($740,000.00)."[40] There is no mistaking the plain language of either of those sentences, which accords with Tiburon's position at present. (There is no other language in that draft limiting the amount Tiburon may collect from the insurance policy.)

At some point between August and the end of October, the definition in the circulating draft agreement was changed to read "for as much as the amount of Seven Hundred Forty Dollars and No Cents."[41] Even in the October version, the only reference to a limitation is that Tiburon's insurance recovery would be reduced by any amounts the Fletcher Defendants had paid toward settlement.[42] The first time that the Fletcher Defendants' counsel articulated a desire to limit Tiburon's collection on the life insurance policy to the amount still owed by the Fletcher

---

[38] *See supra* nn. 28-35 and accompanying text.

[39] (D.E. 81, Defs.' Mot., Ex. C).

[40] *Id.*

[41] (D.E. 81, Defs.' Mot., Ex. G).

[42] *Id.*

7

Defendants, was either in late November of 2017,[43] or on December 4, 2017, in an e-mail to Tiburon's counsel which proposed that "the proceeds of the life insurance policy in the event of Mr. Fletcher's death are to be used only to satisfy any remaining balance due under the Agreement, and proceeds in excess of that amount are to be paid to Mr. Fletcher's estate."[44]

In addition to the fact that the August draft sent by the Fletcher Defendants confirms Tiburon's position, that position is also the one that accords with common sense.[45] As all parties agree, Tiburon is bearing all costs associated with the insurance policy. It is not true, as the Fletcher Defendants claim, that collection of the full amount of the policy upon Mr. Fletcher's death would be an unfair windfall for Tiburon.[46] Tiburon is entering into a bargained-for contract with an insurance company and is making payments for the right to potentially collect in the future. The insurance company obviously believes the deal is profitable for itself. If Mr. Fletcher's death results in Tiburon making money off of the insurance company, that is simply the upside of a deal which also has a potential economic downside for Tiburon (and upside for the insurance company): if the Fletcher Defendants pay the $320,000 settlement amount in due course, Tiburon will have to cancel the life insurance policy on the day the debt is fully paid – as both parties agree – and Tiburon will therefore have paid thirteen years' worth of premiums without any payoff. Given that this particular bargain is between Tiburon and the insurance company, it's not even clear why the Fletcher Defendants care how much Tiburon would collect in the event of Mr. Fletcher's death.

---

[43] (D.E. 79, Pls.' Mot., Skiff Cert., ¶ 23).

[44] (D.E. 81, Defs.' Mot., Ex. J).

[45] *See supra* n. 26 and accompanying text.

[46] (D.E. 81, Defs.' Mot., 9).

At the same time, the Court acknowledges that blame lays on both sides for the delay in consummating this settlement. In September of 2017, for example, Tiburon's counsel sought to increase the consent judgment because it realized belatedly that the insurance company only pays out 80% of the insurable interest (meaning that for an insured interest of $740,000, Tiburon would only be able to collect $592,000).[47] The Fletcher Defendants' counsel was amenable to accommodating Tiburon on this issue, so long as Tiburon agreed to a few extra conditions in exchange,[48] but ultimately Tiburon's counsel dropped the issue and the material terms of the settlement were left unchanged.[49] This delay seems particularly costly in retrospect, since the draft agreement that the Fletcher Defendants' counsel sent to Tiburon's counsel on August 21, 2017 contains the sort of language regarding the life insurance policy that Tiburon seeks to enforce here. In fact, the language in the August draft is better for Tiburon than the agreement it seeks to enforce here, as the August draft did not include a reduction of insurance proceeds by the amount the Fletcher Defendants will have paid toward settlement. Therefore, if only Tiburon had agreed to that draft or something substantially the same, they could have gotten exactly what they seek here from the beginning, and perhaps even something better. For this reason, the Court will not award Tiburon the costs, expenses, or fees associated with enforcing the settlement.

## IV. <u>CONCLUSION</u>

For the reasons articulated herein, the undersigned respectfully recommends that Tiburon's and the Fletcher Defendants' Motions each be **GRANTED IN PART and DENIED IN PART**;

---

[47] (D.E. 81, Defs.' Mot., Ex. D).

[48] (D.E. 81, Defs.' Mot., Ex. E).

[49] (D.E. 81, Defs.' Mot., Ex. F).

that both motions be granted to the extent that the agreed upon portions of the settlement are to be enforced; that Tiburon's motion be granted to the extent that in the event Mr. Fletcher's dies, Tiburon's recovery of insurance proceeds only need be reduced by the amount that the Fletcher Defendants have already paid toward settlement; that the Fletcher Defendants' motion be denied as to its attempt to limit Tiburon's recovery of insurance proceeds any further; and that Tiburon's motion be denied as to its request for the Fletcher Defendants to bear its costs, expenses, and fees in seeking enforcement of this settlement.

The parties have fourteen (14) days to file and serve any objections to this Report and Recommendation.[50] "The District Court need not consider frivolous, conclusive, or general objections."[51]



Honorable Steve Mannion, U.S.M.J.
United States District Court,
for the District of New Jersey
phone: 973-645-3827

2/1/2019 8:08:40 AM

Original: Clerk of the Court
Hon. Claire C. Cecchi, U.S.D.J.
cc: All parties
    File

---

[50] 28 U.S.C. § 636; L. Civ. R. 72.1(c)(2).

[51] *See Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).